United States District Court
Southern District of Texas

**ENTERED**

August 06, 2026

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| JORGE LUIS GARCES CHAVEZ *et al.* | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:26-cv-230 |
| | § | |
| GEO GROUP, INC. *et al.* | § | |

## ORDER

Petitioners, undocumented aliens, bring this 28 U.S.C. § 2241 writ of habeas corpus, challenging the constitutionality of their detention (Dkt. No. 1). After careful review of the parties' briefing and applicable law, Petitioners' Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED IN PART**.

## I.   BACKGROUND

Relevant here, Temporary Protected Status ("TPS") is a shield, offering temporary immigration status to nationals who are already present in the United States. The Secretary of DHS may designate a foreign country as TPS eligible for a period of six to eighteen months if they determine a condition, such as armed conflict or environmental disaster, renders return to that country unsafe. 8 U.S.C. § 1254a(b)(1)–(2). Once granted TPS, DHS cannot detain the undocumented alien based solely on their immigration status. *See* 8 U.S.C. § 1254a(d)(4). Additionally, TPS prevents DHS from removing the undocumented alien while their status is in effect. 8 U.S.C. § 1254a(a)(1)(A).

Petitioners are two[1] Venezuelan nationals who entered the United States and were initially granted TPS (Dkt. No. 1 at 5, ¶ 18; 1-2 at 1, 3; 1-3 at 1–2, ¶ 3). On February

---

[1] On February 27, 2026, Petitioner Edison Leo Mendoza Coronel and Respondents filed a joint stipulation for dismissal (Dkt. No. 12). As a result, the Court terminated him from the action (Dkt. No. 18 at 1 n.1).

1

3, 2025, former DHS Secretary Kristi Noem issued a notice to vacate the 2023 TPS Designation extending Venezuela TPS. *See* Vacatur of 2025 Temporary Protected Status Decision for Venezuela, 90 FR 8805-01, 8806 (Feb. 3, 2025). Shortly thereafter, she terminated the 2023 Designation in full. *See* Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status, 90 FR 9040-01 (Feb. 5, 2025). Following the termination of their TPS, DHS detained Petitioners at varying points (Dkt. Nos. 1 at 6, ¶¶ 24–25; 1-2 at 2, ¶ 9; 1-3 at 2, ¶ 9). They remained detained to this day.

Petitioners filed the instant habeas petition, arguing their detention ran afoul of the TPS statute (Dkt. No. 1 at 12, ¶¶ 48–51). Alternatively, they argue their continued confinement contravenes their constitutional rights (Dkt. No. 1 at 12–13, ¶¶ 52–54). Respondents put forth that they can detain Petitioners, as they are subject to mandatory confinement under 8 U.S.C. § 1225(b)(2)(A) (Dkt. No. 11 at 4).

## II.   LEGAL STANDARD

### A.  28 U.S.C. § 2241

Pursuant to 28 U.S.C. § 2241, a district court may grant a writ of habeas corpus to a petitioner in federal custody in violation of the Constitution or federal law. Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001) (citations omitted), *superseded by statute on other grounds*, Real ID Act of 2005, H.R. 418, *as recognized in Nasrallah v. Barr*, 590 U.S. 573 (2020). Accordingly, challenges to immigration-related detention are within a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### B. Motion for Summary Judgment

"As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000) (citations omitted). Federal Rule of Civil Procedure 56 provides: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.  DISCUSSION

### A. TPS

As § 1254a(d)(4) forbids detention of a TPS recipient, Petitioners' entitlement to release turns on whether their TPS designation is valid. Unsurprisingly, they claim it is and point to a Northern District of California declaratory judgment, which held "(1) the vacatur of the January 17, 2025, TPS extension for Venezuela was unlawful as was (2) the termination of Venezuela's 2023 TPS designation on February 5, 2025" (Dkt. No. 1 at 2, ¶ 2). *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 3539156, at \*3 (N.D. Cal. Dec. 10, 2025). For their part, Respondents contend the declaratory judgment is non-binding and that Petitioners cannot legitimately assert TPS, as Venezuela has been terminated (Dkt. No. 11 at 2–3). With the benefit of a recent Supreme Court opinion, the Court finds it lacks jurisdiction to consider Petitioners' statutory claim.

Section 1254a(b)(5)(A) strips courts of jurisdiction to review "any determination of the [Secretary of Homeland Security] with respect to the designation, or termination or

extension of a designation, of a foreign state under this subsection." *Mullin v. Doe*, 146 S. Ct. 2121, 2133 (2026); *see also* 6 U.S.C. § 557 (providing that statutory references to the Attorney General can be read as referring to the Secretary of Homeland Security). In *Mullin*, plaintiffs challenged DHS's revocation of Syria's and Haiti's TPS designations. *Id.* at 2131–33. The lower courts found that DHS's terminations were racially motivated and arbitrary, and issued stays to avert the agency action. *Id.* In no uncertain terms, the Supreme Court declared § 1254a(b)(5)(A)'s bar "applies to all non-constitutional claims," and the contest to the designations were statutory in nature. 146 S. Ct. at 2137. The *Mullin* Court thus reversed the lower courts' decisions postponing the termination of Syria's and Haiti's TPS designations. *Id.* at 2140.

The Court cannot ignore *Mullin*'s overlay with the instant matter.[2] Indeed, "[i]t follows that the same reasoning would apply to the TPS designation of Venezuela such that 8 U.S.C. § 1254a(b)(5)(A) precludes any claims related to the termination of TPS designations." *Fernandez Fernandez v. Noem*, No. 1:26-CV-01999-KES-CDB (HC), 2026 WL 2085889, at *12 (E.D. Cal. July 20, 2026). Because DHS's termination of Venezuela's TPS designation is not subject to judicial review, the Northern District of California's vacatur unravels. *Id.*  At bottom, Petitioners' TPS was terminated, and § 1254a(d)(4) has no influence on their confinement. *Id.*

### B. Due Process

Petitioners alternatively argue their prolonged detention violates procedural due process (Dkt. No. 1 at 12–13, ¶¶ 52–54). Respondents counter that the Government may

---

[2] The Court also observes that before *Mullin*, several courts in this district rejected similar arguments regarding the declaratory judgment's preclusive effect. *Ruz Fuente v. Noem*, No. CV 4:26-CV-00767, 2026 WL 1270531, at *2 (S.D. Tex. Mar. 20, 2026); *Marcano v. Thompson*, No. CV H-26-1898, 2026 WL 1433090, at *2 (S.D. Tex. May 21, 2026).

constitutionally detain deportable aliens (Dkt. No. 11 at 4). Petitioners' constitutional claim is materially indistinguishable from one the Undersigned addressed in *Herrera Arredondo v. Mullin*, 5:26-cv-370, slip. op. (S.D. Tex. July 30, 2026). For the reasons previously elucidated, the Court finds that Petitioners are entitled to procedural due process protections. It now considers Petitioners' individual characteristics in this as-applied challenge.

1.  *Petitioner Jorge Luis Garces Chavez*

    a.  *The Private Interests*

For the first *Mathews* prong, the Court considers "the private interest that will be affected by the official action." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (citation modified). "The interest in being free from imprisonment is the most significant liberty interest there is." *Bonilla Chicas v. Warden*, 821 F. Supp. 3d 782, 798 (S.D. Tex. 2026) (Saldaña, J.) (quoting *Velasco Lopez v. Decker*, 978 F.3d 842, 851 (2d Cir. 2020)); *see also Rodriguez v. Ortega*, No. 26-50183, 2026 WL 1906557, at \*14 (5th Cir. July 2, 2026), *reh'g en banc granted, opinion vacated sub nom. Sosnava Rodriguez v. Ortega*, No. 26-50183, 2026 WL 2014647 (5th Cir. July 10, 2026) (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).

Here, Petitioner Garces Chavez entered the United States in November 2021 (Dkt. No. 1-2 at 2, ¶¶ 4–5). He settled down in Fort Worth shortly after his arrival (Dkt. No. 1-2 at 2, ¶ 4). Prior to his detention, he worked in manufacturing (Dkt. No. 1-2 at 3, ¶ 13). His family, including an Autistic three-year old, relies on him financially and emotionally (Dkt. No. 1-2 at 3, ¶ 14). He is the sole provider for his family, as his wife is unable to

work (Dkt. No. 1-2 at 3, ¶ 14). This first *Mathews* factor overwhelmingly weighs in Petitioner Garces Chavez's favor.

### b. Cost-Benefit Analysis

Next, the Court explores the cost-benefit analysis of "the risk of an erroneous deprivation" versus the probable value of additional safeguards. *Mathews*, 424 U.S. at 335. "[I]mmigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings." *Singh v. Bondi*, No. SA-26-CA-00541-XR, 2026 WL 752457, at *13 (W.D. Tex. Mar. 16, 2026) (Rodriguez, J.) (citing *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). However, § 1225(b)(2)(A)'s detention, without meaningful review at *any* point, no matter how long the detention lasts, plainly has a high risk of erroneous deprivation. *See id*. Indeed, Petitioner has been detained since October 24, 2025, without *any* individualized determination about his flight risk or dangerousness (Dkt. No. 1-2 at 2, ¶ 9). A bond hearing provides safeguards, which allows a neutral immigration judge to decide whether to release Petitioner based on his specific characteristics. *Vieira v. de Anda-Ybarra*, 806 F. Supp. 3d 690, 701 (W.D. Tex. 2025).

What is more, the Supreme Court has stressed that deportation proceedings are "civil, not criminal, and . . . they are nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. "An individualized analysis ensures the purpose of detention is not punitive." *Singh*, 2026 WL 752457, at *13. The Court finds that the second *Mathews* factor weighs in Petitioner's favor.

### c. The Government's Interests

Finally, the Court considers "the Government's interest, including the function

involved and the fiscal and administrative burdens" associated with using different procedural safeguards. *Mathews*, 424 U.S. at 335. "To be sure, the Government has a weighty interest in removing deportable noncitizens." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 705 (S.D. Tex. 2025) (citation modified). It also has a vested interest in "ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Vieira*, 806 F. Supp. 3d at 701. But nothing in the record suggests Petitioner Garces Chavez will cause such problems. This factor weighs in favor of him.

### 2. *Petitioner Leidis Mairith Linarez Silva*

The Court incorporates the cost-benefit analysis and the Government's interests as stated above. It writes separately to evaluate Petitioner Linarez Silva's private interests. *Mathews*, 424 U.S. at 335.

Petitioner Linarez Silva entered the United States in October 2022 (Dkt. No. 1-3 at 2, ¶ 4). She possesses a valid work permit and was employed by Amazon prior to her detention (Dkt. No. 1-3 at 3, ¶¶ 12, 15). Initially, she resided in Austin, Texas but she relocated to Dallas for the sole purpose of being closer to her immigration appointments (Dkt. No. 1-3 at 3, ¶ 15). She is involved in her local community and intends to rejoin society if she gets released (Dkt. No. 1-3 at 4, ¶ 16). This Court finds the first *Mathews* factor decidedly weighs in her favor.

### 3. *Remedy*

Petitioners seek their immediate release. Given that the Court has found a *procedural* violation, the logical remedy is the procedure due: A hearing for an individualized determination of Petitioner's characteristics pending release. After all, "[a]n immigration judge is in a better position to conduct the sort of individualized review

7

that is necessary to determine if Petitioner should be released." *Angel v. Duke*, No. CV H-17-3172, 2017 WL 11698492, at *2 (S.D. Tex. Dec. 18, 2017) (citation omitted).

Accordingly, Respondents must provide Petitioners a bond hearing **within five business days of the date of this Order**. **In the event Respondents fail to comply in a timely manner, they must immediately release Petitioners**. *Rodriguez*, 2026 WL 1906557, at *17 (noting that the failure to provide a bond hearing would precipitate immediate release); *see Bravo-Marcatoma v. Vergara,* No. EP-26-CV-00634-DCG, 2026 WL 2045475, at *2 (W.D. Tex. July 10, 2026) (same).

"[A]t the hearing, the Government must articulate an individualized justification for further detention without bond." *Rodriguez*, 2026 WL 1906557, at *16. Obviously, dangerousness and flight risk may be relevant factors, but "the Government may be able to assert another justification why an unadmitted alien must be detained." *Id.* However, the Immigration Judge **may not** solely rest any denial of Petitioner's bond on lack of jurisdiction under *Buenrostro-Mendez*'s principles. *See Vieira*, 806 F. Supp. 3d at 702. Should they continue to disclaim jurisdiction, Respondents must **immediately** release Petitioners.

## IV.   CONCLUSION

For the foregoing reasons, Petitioners' Writ of Habeas Corpus (Dkt. No. 1) is **GRANTED IN PART**. All relief not expressly provided for in this Order is **DENIED**. Respondents' Motion for Summary Judgment is **DENIED** (Dkt. No. 11). Petitioners' Motion for a Temporary Restraining Order and Motion for an Order to Show Cause (Dkt. No. 2) are **DENIED AS MOOT**.

Respondents are further **ORDERED** to file an advisory **within five business days** of the bond hearing, stating whether Petitioners were released, and if so, detailing the conditions of their release.

It is so **ORDERED**.

**SIGNED** August 6, 2026.

Marina Garcia Marmolejo
United States District Judge

9